IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | |
|---|---|
| G&K SERVICES, CO., | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   No. 3:08cv0048 SWW |
| | * |
| | * |
| | * |
| BILL'S SUPER FOODS, INC. and | * |
| BILLY ORR, | * |
| | * |
| Defendants. | * |

## ORDER

Plaintiff G&K Services, Co. ("G&K") brings this action against defendants Bill's Super Foods, Inc. ("Bill's") and its President, Billy Orr, for breach of contract. Defendants, in turn, have counterclaimed against G&K, alleging claims which in large part arise from Bill's assertions that G&K engaged in the practice of charging "phantom" and "bogus" charges to invoices. Defendants also assert claims concerning quality of service.

The matter is before the Court on of defendants to compel [doc.#33] and for leave to amend their answer to G&K's third amended complaint and counterclaim [doc.#35]. Responses and replies to these motions have been filed and they are now ready for resolution.

I.

The Court first turns to defendants' motion to compel. In addressing defendants' motion, this Court will follow the order in which defendants set forth the discovery items they seek to compel.

i.

In Request for Production No. 5, defendants seek copies of all payment history made by defendants, including but not limited to, copies of checks, ledgers, printouts, etc.  Defendants state that one of the core allegations of G&K's complaint is that defendants have failed to pay on their account and the defendants state they thus are entitled to records in G&K's possession verifying actual payment or in the other sense, failure to pay.

In response, G&K states defendants, aside from not conferring in good faith on this issue, should have their own copies of checks and payment history to G&K and G&K does not retain copies of checks received in payment of its invoices.  In any case, G&K states it has provided what documents it has which are responsive to defendants' Request for Production No. 5.

The Court denies as moot defendants' motion to compel with respect to Request for Production No. 5 as G&K states it has provided what documents it has that are responsive to that request and defendants have not controverted G&K's representation.

ii.

In Interrogatory No. 6, defendants request a list of all lawsuits in which G&K has ever been involved as a party in connection with fraudulent and phantom charges, giving the approximate date, the court in which it was pending, a brief statement of the case, the court case number, the outcome, and the names of all parties, and all pleadings in connection with each suit. Defendants state they have since amended their requests and asked that G&K make an attempt to respond by only listing the cases and docket numbers with a short summary of the outcome. Defendants state they believe this goes to show the pattern of deceptive conduct practiced by

G&K.

G&K objects, stating that a Class Action Settlement in which Bill's was a plaintiff and G&K a defendant binds defendants and precludes the claims defendants assert against G&K by virtue of defendants electing not to opt out of the Class Action when given notice.[1]  In this respect, argues G&K, the Class Action Settlement precludes the relevance of any discovery regarding any such claims that were addressed by the Class Action, such as the very claims referenced by Bill's in this request.  G&K further states the request is overbroad in that it asks for lawsuits "ever."  G&K states that members of the current G&K legal department are unaware of any actions since 2004 in which "fraudulent and phantom" charges have been an issue.  G&K notes that its legal department has only been in existence since 2004, and it does not retain records of any legal actions beyond 2 years back.  G&K states that any actions involving G&K prior to 2004 were handled by the particular individual G&K location, of which there are 130 nationwide and that such records would be in the possession of whatever local counsel that was hired by such location, and whether there even remains records of who handled each case is unknown. Requiring G&K to research such information from 130 locations across the nation, unlimited in time, states G&K is unduly burdensome.  G&K states that defendants fail to explain the relevance of such information to the present action, except to state that it "believes" such

---

[1] Bill's was one of a class of plaintiffs in a class action in the Circuit Court of Barbour County, Alabama, styled *In Re Textile Rental Services Litigation*, Case No:CV-05-19 (the "Class Action").  G&K was a defendant in the Class Action and states that Bill's, though provided notice of the Class Action, and the opportunity to opt out of the Class Action, did not opt out.  Bill's states it did not participate in the Class Action in any regard and that the notices were mailed to a store that is a different corporation and a satellite retail office in Tuckerman, Arkansas.  However, in G&K's requests for admissions, Bill's admits that it received a written notice of the class action and admits that it did not exercise its right to opt out of the class action. In the Class Action, the plaintiffs therein sought redress for the same type charges labeled by Bill's here as "phantom" and "bogus," and which, states G&K, primarily form the basis for Bill's Counterclaim.  The Class Action was settled by Order dated January 23, 2007, and by the terms of the Class Action Settlement Order, all class members were permanently enjoined from "commencing, prosecuting, continuing, or assisting" in any action against any "Settling Defendant," which included G&K, "based on, arising out of, or relating in any way to any Ancillary Charge" as defined by the Settlement Agreement approved by the Class Action Settlement Order.

"shows a pattern of deceptive conduct practiced by Plaintiff." Again, states G&K, such claims by defendants are the very type claims addressed by the Class Action, and precluded by the Class Action Settlement, to which Bill's is legally bound.

The Court grants defendants' motion to compel with respect to Interrogatory No. 6 as the Court does not at this time address G&K's argument that the majority of defendants' Counterclaim is precluded by the Class Action Settlement Order but will address that argument in the context of G&K's motion for summary judgment. The Court will not require that G&K produce all lawsuits "ever" involving G&K, however. Rather, the Court will require that G&K disclose any lawsuits, their docket numbers, and a short summary of their outcome beginning in January 2004 and going forward in which it has been involved as a party in connection with fraudulent and phantom charges.

iii.

In Interrogatory No. 7, defendants ask G&K to list all lawsuits in which G&K has ever been involved as a party or testified regarding in which breach of contract was alleged, giving the approximate date, the court in which it was pending, a brief statement of the case, the Court case number, the outcome, the names of all parties, and all pleadings in connection with each suit. Defendants state they have since amended their request and asked that G&K make an attempt to respond by only listing the cases and docket numbers with a short summary of the outcome. Defendants state this information is relevant as G&K has alleged a breach of the Service Agreement.

G&K objects, stating defendants fail to explain the relevance of such information to the

present action, except to say that "Plaintiff has alleged Defendant breached a Service Agreement."  Further, states G&K, this request is overbroad in that it asks for lawsuits "ever," wants cases in which G&K was involved as a party or a witness, and is not limited to suits involving breaches of service agreements as in the present case, but any "contract."  G&K notes that it does not retain records of any such actions beyond 2 years back and, as explained above, any records of actions prior to 2004 would be in the possession of whatever local counsel that was hired by the particular local G&K location, of which there are 130 nationwide.  G&K states that  Requiring it to research such information from 130 locations across the nation, unlimited in time is unduly burdensome.

The Court will grant defendants' motion to compel with respect to Interrogatory No. 7, but will not require that G&K produce all lawsuits "ever" involving G&K and will not require that lawsuits involving any contract be produced.  Rather, the Court will require that G&K disclose any lawsuits, their docket numbers, and a short summary of their outcome beginning in January 2004 and going forward in which it has been involved as a party in connection with alleged breaches of service agreements.

iv.

In Interrogatory No. 8, defendants ask that G&K state or list all customers in the Missouri, Tennessee, Mississippi, Kentucky or Arkansas region who have terminated their Service Agreement with G&K Services beginning in 2002, and for each customer, provide the following: a. Name, address, telephone number and contact; and b. Reason given for termination. Defendants state they have since amended the request to include only Arkansas and Tennessee.

Defendants further state that Bill's is not in competition with G&K and thus the statement that such information is propriety has no merit.

G&K objects, stating this question is overbroad as it is not limited to terminations for cause but would require listing all customers who have terminated for any reason, which is not relevant to this action. G&K further states the names of G&K customers in 5 or 2 states is proprietary and confidential information. Finally, states G&K, Bill's has not explained why such a customer list is relevant to this breach of contract claim, but instead simply states that since it is not "in competition with G&K," such claim of proprietary information has no merit. G&K states that whether Bill's competes with G&K is not determinative of whether G&K has a proprietary interest in its customer list, or whether it has the right to keep such a list confidential and that given Bill's request, it is evident that Bill's intent is to contact these former customers. G&K states that such contacts and the unknown discussions that might ensue could certainly cause damage to G&K's business, and again, no relevance to the present action has been demonstrated.

The Court will grant defendants' motion to compel with respect to Interrogatory No. 8 but only as to customers in Tennessee and Arkansas who, since January 2002 and going forward, have terminated their service agreement with G&K Services because of disputes similar to the allegations in this action. To the extent G&K claims this or any other matter today being compelled is confidential business information, the Court will entertain from G&K (in conjunction with defendants) a proposed protective order.

v.

In Interrogatory No. 10, defendants ask G&K to state and/or list all customers in the

Jonesboro, Arkansas market and for each, please state the name, address, telephone number and contact person. Defendants state that information of this sort would aid the trier of fact in its consideration and review of G&K's business practices and again notes that as Bill's is not in competition with G&K, there is no proprietary information involved.

G&K objects, stating this question seeks proprietary and confidential information, and no basis is given for why such information is needed or relevant. G&K states that the fact that Bill's is not a competitor of G&K gives it no right to G&K's customer list and that as with the prior request, it is evident that Bill's intent is to contact these present customers. G&K states that such contacts and the unknown discussions that might ensue could certainly cause damage to G&K's business, and again, no relevance to the present action has been demonstrated.

The Court finds denies defendants' motion to compel with respect to Interrogatory No. 10, agreeing with G&K that no sufficient basis is given for why such information is needed or relevant.

vi.

In Request for Production No. 8, defendants ask that G&K furnish a copy of G&K's Route Training Manual used to train new route persons. Defendants state that such information will aid the trier of fact in its deliberations of defendants' claim of deceptive business practices.

In response, G&K states it has supplemented its response to advise that it does not have a training manual per se, but that training is done by management personnel and senior route sales representatives, via an online program. Such a training program, argues G&K, is confidential business information of G&K and Bill's has not articulated how such information is relevant to its

claims against G&K.

The Court grants defendants' motion to compel with respect to Request for Production No. 8 and directs that G&K provide material details concerning its online training program, agreeing with defendants that such information may aid the trier of fact concerning certain claims in this action.  Again, to the extent G&K claims this or any other matter today being compelled is confidential business information, the Court will entertain from G&K (in conjunction with defendants) a proposed protective order.

vii.

In Request for Production No. 9, defendants ask that G&K furnish a copy of appointment books of Bill Harris, Leslie Wood, and Chris Snyder beginning January 1, 2007 to May 28, 2007. Defendants state that copies should be provided as this is a significant issue of fact in dispute.

In response, G&K states it has supplemented this response to state that while it reasserts its objection that the requested employees' appointment books/calendars contain confidential information, and without waiving said objection, the calendars do not contain any specific notations regarding subject matter of meetings with Bill's personnel.  G&K states it does not dispute that such meetings were held, but disagrees with defendants' characterizations of the subject of these meetings.  G&K states that among the information contained in the referenced calendars and appointment books is information from which present customers of G&K can be ascertained and, as discussed above, the identity of these customers is proprietary information, and Bill's has not demonstrated how the identity of these customers is in any way relevant to this action.  G&K states that as to the content of meetings between G&K employees and Bill's

employees, Bill's can certainly depose the G&K employees in question and inquire as to the matters discussed in such meetings.

The Court denies defendants' Request for Production No. 9 as G&K asserts, and defendants do not controvert, that the appointment books at issue do not contain notations regarding subject matter of meetings with Bill's personnel and G&K states it does not dispute that such meetings were held. Moreover, defendants may depose the G&K employees in question and inquire as to the number of meetings and their subject matter.

### viii.

In Request for Admission No. 4, defendants ask G&K to admit that Bill Harris is authorized to conduct and carry out the business of G&K Services in the Jonesboro, Arkansas market. Defendants state they are simply asking, "Did Bill Harris have proper authority to act on behalf of and carry out the business that occurred in the Jonesboro, Arkansas market for G&K?" Defendant states that a core allegation of G&K's complaint is that defendants did not give proper notice of termination of services.

In response, G&K states it has supplemented this response by stating that Bill Harris is authorized to enter into Service Agreements on behalf of G&K, and is authorized to negotiate and complete such agreements, but that Bill Harris is not authorized to enter into other contracts on behalf of G&K, or to conduct business outside the realm of selling G&K's services and goods.

The Court denies as moot defendants' Request for Admission No. 4, finding that G&K has sufficiently answered it.

II.

The Court now turns to defendants' motion for leave to amend their answer to G&K's third amended complaint and counterclaim.  Defendants state that in the course of discovery they find it necessary to incorporate a few new allegations and affirmative defenses.

In response, G&K notes that defendants' motion for leave to amend was filed almost two months after their summary judgment motion was filed and one day before the deadline to file for leave to amend pleadings. G&K states that defendants' Answer to Third Amended Complaint, which they now seek to amend, sets forth 39 affirmative defenses and that not until G&K filed its motion for summary judgment, and in the course of briefing to support that motion which pointed out certain deficiencies and failures to plead certain defenses, did defendants seek leave to amend their Answer to cure those deficiencies.  G&K states that defendants offer no new facts or evidence to demonstrate that the proposed amendment has substantial merit. G&K states that it would be prejudiced if defendants are permitted to repair an otherwise fatally deficient answer.

Concerning amendment of the counterclaim, G&K states that as best as can be ascertained, the primary thrust of the proposed second amended counterclaim is the assertion that G&K committed fraud or a deceptive trade practice by entering into a contract with Bill's at a time when a prior contract was in existence and had not expired.  G&K states the proposed amended counterclaim does not sufficiently plead fraud to comply with Fed.R.Civ.P. 9(b) and that it is unaware of any legal prohibition against two parties to a contract replacing that contract with a new contract.  G&K states that no factual allegations of any fraudulent actions by G&K are contained in the proposed amended counterclaim and that the new claims asserted in the proposed amended counterclaim fail to state a claim upon which relief can be granted, and are thus futile.

Amendments should be allowed with liberality and when justice so requires even after defendant has served the moving party with a motion for summary judgment. *Chestnut v. St. Louis County, Mo.*, 656 F.2d 343, 349 (8th Cir. 1981). However, there is no absolute right to amend and a court may deny the motion based upon a finding if undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the moving party, or futility. *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007).

Here, defendants filed their motion for leave to amend within the time established by this Court's scheduling order and the Court is unable to determine on this record that amendment would be futile (although it may be that in the context of ruling on summary judgment in reference to the issue of the scope of the Class Action, many claims will be determined to be precluded). Moreover, G&K has amended their complaint three times and, in these circumstances where discovery is not yet complete, defendants will be allowed the same privilege.

### III.

This Court's Final Scheduling Order [doc.#15] establishes a discovery deadline of January 20, 2009 and a dispositive motions deadline of February 3, 2009. Given that the Court has granted in part defendants' motion to compel (which may necessitate additional discovery, including, as noted above, additional depositions), the Court will extend the discovery and dispositive motions deadlines. The Court issue an Order establishing new deadlines for conducting discovery and filing dispositive motions in due course.[2]

---

[2] It may be that the scheduled trial date of April 20, 2009 will have to be continued. The Court will address this issue in consulting with the parties concerning new deadlines for conducting discovery and filing dispositive motions.

Given also that the Court has granted defendants' motion to amend their answer and counterclaim, and as the additional claims therein may result in additional summary judgment motions from G&K, the Court will deny without prejudice G&K's current motion for summary judgment [doc.#19] and its motion to deem admitted G&K's Local Rule 56.1 statement [doc.#28]. G&K may refile these motions in the same or revised form consistent with the soon-to-be established dispositive motions deadline.[3]

IV.

For the foregoing reasons, the Court grants in part and denies in part as set forth above defendants' motion to compel [doc.#33], grants defendants' motion for leave to amend their answer to G&K's third amended complaint and counterclaim [doc.#35], and denies without prejudice G&K's motion for summary judgment [doc.#19] and its motion to deem admitted G&K's Local Rule 56.1 statement [doc.#28].  The Court will issue an Order establishing new deadlines for conducting discovery and filing dispostive motions in due course.

IT IS SO ORDERED this 17th day of December 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[3] Given the nature of this action, the Court would prefer a comprehensive motion for summary judgment that addresses all the issues G&K claims warrant summary judgment rather than piecemeal motions.