**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**


G & K SERVICES COMPANY                              PLAINTIFF/COUNTER-DEFENDANT


VS.                              3:08CV00048 SWW/JTR


BILL'S SUPER FOODS, INC.; and
BILLY ORR                              DEFENDANTS/COUNTER-CLAIMANTS


**<u>ORDER</u>**[1]

## I. Introduction

Pending before the Court are the following *non-dispositive Motions*: (1) Plaintiff's Motion

For Order Declaring Local Rule 56.1 Statement Admitted (docket entry #51); (2) Defendants'

Motion to Extend the Time Period to Conduct Discovery and Extend the Dispositive Motions

Deadline (docket entry #61); (3) Plaintiff's Motion to Compel Discovery (docket entry #66); (4)

Plaintiff's Motion to Strike (docket entry #68); (5) Defendants' Motion to Compel Discovery

Responses (docket entry #72); and (6) Defendants' Motion for Leave  to Amend Their Amended

Counterclaim and Answer.  (Docket entry #74.)  Before addressing the merits of these Motions, it

is important to understand certain aspects of the procedural history of this case.

### A.    Procedural History

Plaintiff/Counter-Defendant, G&K Services Company ("Plaintiff" or "G&K"), is a

Minnesota corporation which sells and leases textile goods and services.  (Docket entry #12, Third

---

[1]On June 29, 2009, United States District Judge Susan Webber Wright referred this case to
the undersigned United States Magistrate Judge "for further proceedings and recommendation."
(Docket entry #80.)

Amend. Comp. at ¶1.)  Defendant/Counter-Claimant Bill's Superfoods, Inc. ("Defendant Bill's"),

is an Arkansas corporation that owns and operates a small chain of retail grocery and convenience

stores.  (Docket entry #13, Ans. to Third Amend. Compl. at ¶2.)  Defendant/Counterclaimant Billy

Orr ("Orr") is the President of Defendant Bill's.  *Id.*

In their Counterclaim, Defendants allege that Plaintiff imposed "phantom" and excessive fees

Plaintiff alleges that Defendant Bill's breached the parties' September 12, 2006 Service

Agreement by terminating the contract without written notice.  (Docket entry #12, Third Amend.

Comp. at ¶9.)  By way of relief, Plaintiff seeks "liquidated damages" against Defendant Bill's and

Defendant Orr.[2]  (Docket entry #12, Third Amend. Comp. at ¶¶ 11-12.)

In their Counterclaim, Defendants allege that Plaintiff imposed "phantom" and excessive fees

during the course of their contractual relationship, and provided poor service.  (Docket entry #42,

Second Amend. Ctrclm. at ¶¶ 3-19.)  Based on these allegations, Defendants claim that Plaintiff is

liable for: (1) breach of contract; (2) "fraud, suppression, and deceit"; (3) unjust enrichment; (4)

"money paid by mistake"; (5) violation of the Arkansas Deceptive Trade Practices Act; and (6)

breach of the implied covenant of good faith and fair dealing.  (Docket entry #42, Second Amend.

Ctrclm. at ¶¶ 20-71.)  Defendants seek "injunctive relief" prohibiting Plaintiff from imposing

improper fees in the future and "declaratory relief" holding Plaintiff's practice of "collecting

fictitious fees" to be "improper and in violation of the laws of the State of Arkansas."  (Docket entry

#42, Second Amend. Ctrclm. at ¶¶ 72-78.)

---

[2]These liquidated damages are based on a formula contained in the Service Agreement. Liquidated damages are defined as one-half of the amount of the average weekly invoice being billed to a customer multiplied by the number of weeks remaining on the life of the five-year contract.  (Docket entry #12, Third Amend. Comp. at ¶ 10.)

Based on a personal guaranty executed by Defendant Orr, Plaintiff claims that he is "jointly and severally" liable, with Defendant Bill's for the liquidated damages. (Docket entry #12, Third Amend. Comp. at ¶¶ 11-12.)

On June 3, 2008, the Court entered a Scheduling Order setting this case for a bench trial beginning the week of April 20, 2009. (Docket entry #15.)  Importantly, this Scheduling Order: (1) set a discovery cutoff deadline of January 20, 2009[3]; (2) fixed November 6, 2008, as the deadline to amend the pleadings; and (3) established February 3, 2009, as the dispositive motions deadline. *Id.*  Finally, the Scheduling Order provided that a party's failure to meet the dispositive motions deadline could result in the denial of an untimely motion. *Id.*

On September 9, 2008, Plaintiff filed a Motion for Summary Judgment (docket entry #19), a Brief in Support (docket entry #20), and a Statement of Undisputed Material Facts.  (Docket entry #21.)  In these papers, Plaintiff argued that, as a matter of law, it was entitled to a judgment in its favor on its breach-of-contract claim and Defendants' counterclaims.[4]  (Docket entry #19.)

On October 1, 2008, Defendants filed a Response to Plaintiff's Motion for Summary Judgment (docket entry #24), a Brief in Support (docket entry #25), and a Response to Plaintiff's Statement of Undisputed Facts.  (Docket entry #26.)

On October 9, 2008, Plaintiff filed a Motion to Deem Admitted various statements in its Statement of Undisputed Material Facts.  (Docket entry #28.)  According to Plaintiff, because Defendants filed "denials" that did not "legitimately controvert" Plaintiff's Statements, all of those Statements should now be deemed admitted.

---

[3]The Court allowed the parties to conduct "voluntary" discovery after January 20, 2009, but made it clear that it would *not* resolve any discovery disputes arising after January 20.  (Docket entry #15.)

[4]According to Plaintiff, *res judicata* now bars the "bulk" of Defendants' counterclaims. This *res judicata* defense arises from a state class action lawsuit that was filed against Plaintiff in Alabama.  Plaintiff alleges that Defendant Bill's was a member of the plaintiff class and that, under the terms of the 2007 Settlement Agreement, Defendant Bill's waived and released all of the causes of action asserted in the Counterclaim.

On October 30, 2008, Defendants filed a Motion to Compel Plaintiff to respond to various written discovery requests. (Docket entry #33.) On November 5, 2008, Defendants filed a Motion for Leave to File an Amended Answer to Plaintiff's Third Amended Complaint and a Second Amended Counterclaim. (Docket entry #35.)

On December 17, 2008, the Court entered an Order granting, in part, and denying, in part, Defendants' Motion to Compel, and granting Defendants' Motion for Leave to File an Amended Answer to Plaintiff's Third Amended Complaint and a Second Amended Counterclaim. (Docket entry #40.) Recognizing that the Second Amended Counterclaim might require Plaintiff to file a new or supplemental motion for summary judgment, the Court denied Plaintiff's Motion for Summary Judgment and Motion to Deem Admitted, without prejudice to those papers being refiled after a Scheduling Order was entered establishing new discovery and dispositive motions deadlines. *Id.*

On January 12, 2009, Plaintiff filed a Second Motion for Summary Judgment (docket entry #44), a Brief in Support (docket entry #45), and a Statement of Undisputed Facts.[5] (Docket entry #46.) On January 23, 2009, Defendants filed a Response to Plaintiff's Second Motion for Summary Judgment (docket entry #47), a Brief in Support (docket entry #48), and a Response to Plaintiff's Statement of Undisputed Facts. (Docket entry #49.) On January 29, 2009, Plaintiff filed a Second Motion to Deem Admitted its Statement of Undisputed Facts. (Docket entry #51.)

On February 2, 2009, the Court entered an Order addressing the growing dispute between the parties about the need for additional discovery and the timing of dispositive motions. (Docket

---

[5]The Court will address Plaintiff's Second Motion for Summary Judgment in a separate Recommended Disposition.

entry #53.)  For example, in Defendants' Response to Plaintiff's Second Motion for Summary Judgment, they asserted that: (1) Plaintiff was in "violation" of the Court's December 17, 2008 Order because its Second Motion for Summary Judgment was filed prior to the Court setting a new dispositive motions deadline; (2) they had not yet had the opportunity to depose Plaintiff's witnesses; and (3) they had not yet received the discovery responses ordered in the Court's December 17, 2008 Order.  Plaintiff countered that it had not violated the Court's December 17, 2008 Order by filing its Second Motion for Summary Judgment, and that the resolution of the issues raised in its Second Motion for Summary Judgment would not be altered by any additional discovery.

After considering these arguments, the Court held that: (1) the *final* discovery cutoff deadline should be extended to March 16, 2009; (2) the dispositive motions deadline should be extended to March 30, 2009; (3) the parties had until March 30, 2009, to supplement their pending summary judgment pleadings; and (4) the April 20, 2009 trial date was cancelled and would be rescheduled after the Court ruled on Plaintiff's Second Motion for Summary Judgment.  (Docket entry #53.)

## B.    Pending Non-Dispositive Motions

In this Order, the Court will resolve the following nondispositive Motions: (1) Plaintiff's Motion for Order Declaring Plaintiff's Local Rule 56.1 Statement Admitted (docket entry #51); (2) Defendants' Motion to Extend the Time Period to Conduct Discovery and Extend the Dispositive Motions Deadline (docket entry #61); (3) Plaintiff's Motion to Compel Discovery (docket entry #66); (4) Plaintiff's "Motion to Strike Defendants' Response to Plaintiff's Supplemental Statement of Material Facts and Defendants' Response to Plaintiff's Supplement to Brief in Support of Renewed Motion for Summary Judgment" (docket entry #68); (5) Defendants' Motion to Compel

Discovery Responses (docket entry #72); and (6) Defendants' Motion for Leave to File a Third

Amended Counterclaim and a Third Amended Answer (docket entry #74).

## II. Discussion

**A.      Plaintiff's Motion For Order Declaring Local Rule 56.1 Statement Admitted (docket entry #51)**

On January 12, 2009, Plaintiff filed a Statement of Undisputed Facts in Support of its Second

Motion for Summary Judgment.    (Docket entry #46.) This Statement contained 34 individually

numbered paragraphs.  On January 23, 2009, Defendants filed a Response to Plaintiff's Statement

of Undisputed Facts.[6]  (Docket entry #49.)

On January 28, 2009, Plaintiff filed a "Motion for Order Declaring Plaintiff's Local Rule

56.1 Statement Admitted."  (Docket entry #51.)  In its Motion, Plaintiff argues that Defendants did

not "legitimately controvert" 17 of its Statements, and that 5 of its Statements were not addressed

at all.  Thus, Plaintiff requests that these "illegitimately controverted" or "unaddressed" Statements

---

[6]Local Rule 56.1(a) of the Eastern District of Arkansas provides that, when a party moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the motion must be accompanied by a "short an concise statement of the material facts as to which it contends there is no genuine issue to be tried."  The non-moving party is required to file "a short and concise statement of the material facts as to which it contends a genuine issue exists to be tried."  Local Rule 56.1(b).  All materials facts set forth in the moving party's statement "shall be deemed admitted unless controverted by the statement filed by the non-moving party[.]" Local Rule 56.1(c).

The purpose of the Local Rule is to "help[] the Court determine those facts on which the parties agree-and those on which they do not agree." *See Duvall v. Cuty of Rogers*, 2005 WL 3784932 (W.D. Ark. 2005) (unpublished decision); *see also Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002) ("Thanks to Rule 56.1, this court is not obligated to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make [an] analysis and determination of what may, or may not, be a genuine issue of material disputed fact.") (construing identical local rule).

Regrettably, neither Plaintiff's nor Defendants' Rule 56.1 papers have "helped" the Court determine those facts on which the parties agree - and those which they do not agree.  As a result, the Court has been forced to parse the record to determine the true nature and scope of the matters now in dispute.

of Undisputed Facts be deemed admitted.[7]

On February 4, 2009, prior to filing a Response to Plaintiff's January 28 Motion, Defendants filed a "Supplemental Response to Plaintiff's Renewed Statement of Material Facts" which provided responses to Plaintiff's last five Statements.  (Docket entry #55.)  On February 6, 2009, Defendants filed their Response to the Motion.[8]  (Docket entry #56.)

The Court will rule, in chronological order, on each of the Statements of Undisputed Fact which Plaintiff seeks to have "deemed admitted."

1.     **Plaintiff's Statement No. 6**: "Orr admits execution of the Personal Guaranty. (See Amended Answer to Third Amended Complaint, ¶ 5)."  (Docket entry #46 at 2, ¶6.)

**Defendants' Response to Statement No. 6:** "Dispute, Individual Defendant Bill Orr does not personally recall executing a guaranty to guarantee payment of credit balances due and owing but questions or denies the authenticity of the document and demands best evidence.  As stated previously, such guaranty is inapplicable to a liquidated damage provision or breach of contract issue." (See Affidavit of Bill Orr, Exhibit 1; "No invoices have ever been delinquent during the relationship with G & K Services." See Also, Plaintiff's Renewed Motion for Summary Judgment, Exhibit 1, Affidavit of Leslie Wood, p 2, paragraph 5; "the accounts receivable balance has been paid.')

(Docket entry #49 at 2-3, ¶6.)

---

[7]In Plaintiff's Motion, it argues that because Defendants did not "legitimately controvert" 17 of its Statements, they should be "deemed admitted."  (Docket entry #51.)  Plaintiff makes this argument generally, without identifying the specific Statements.  In Plaintiff's Brief in Support, it again argues, generally, that Defendants denied *17* of its Statements "without evidentiary support."  Here, Plaintiff specifically identifies *16* Statements which it argues should be deemed admitted: Nos. 6, 11, 12, 13, 14, 15, 18, 19, 20, 21, 23, 25, 26, 27, 28, and 29.  (Docket entry #52.)  Thus, in this Order, the Court will only address the 16 Statements that Plaintiff has specifically identified.

[8]Consistent with the Court's February 2, 2009 Order, Plaintiff filed a Supplement to its Statement of Undisputed Facts on March 30, 2009, which added 8 new Statements, numbered 35-42.  (Docket entry #60.)  Defendants filed their Response to Plaintiff's Supplemental Statement on April 8, 2009.  (Docket entry #63.)  Plaintiff later filed a Motion to Strike Defendant's April 8 Response (docket entry #63), which the Court will address in Section  II.D, *infra* at 33.

Plaintiff argues that this Statement should be deemed admitted because Defendants have not disputed "the basic fact that Orr executed the Personal Guaranty in question." (Docket entry #52 at 2.) In Response, Defendants state:

> Bill Orr admits he probably, [sic] did execute some sort of a guaranty to guarantee payment of credit balances due and owing, as Bill's Super Foods had no credit history at that time. Mr. Orr, however, denies the authenticity of the document presented by the Plaintiff and demands that the original be produced. See Federal Rule of Evidence 1002. The copy put forth by the Plaintiff appears, on its face to be piecemeal and has illegible names and dates. See Renewed Affidavit of Bill Orr, Exhibit 1. Because the purported guaranty requires Cash on Delivery ("COD") terms, the obvious purpose would be to secure payment for balances on open account. Bill Orr denies that the document is authentic and requests the original document. Defendant Bill Orr thus denies that he signed this personal guaranty as set forth by Plaintiff. In this and other pleadings, Bill's Super Foods and Bill Orr, individually, have exhaustively pointed out the blatant deficiencies and the irregularities of the purported guaranty. Moreover, the guaranty relates to any arrearages or past due balance that may be in effect but does not pertain to or have any relevance to a liquidated damages provision.

(Docket entry #57 at 2.)

Based on this Response, it appears Defendants have forgotten that they *admitted* in their Amended Answer that Defendant Orr signed the "Personal Guaranty." *See* ¶5 of Defendants' Amended Answer to Plaintiff's Third Amended Complaint ("Defendants admit that it appears that prior to the execution of the Agreement, Defendant Orr signed some form of a personal guaranty and admits a copy of what appears to be the purported guaranty was attached to the Second Amended Complaint but deny the guaranty relates to the basis of the lawsuit, is applicable to Plaintiff's cause of action, is authentic, and deny any remaining allegations . ... The Plaintiff should be held to strict proof in connection with the authenticity of the purported guaranty.").

In support of their so-called "denial," Defendants now rely on the renewed affidavit of Defendant Orr. In pertinent part, this affidavit provides the following:

4.  I hereby certify that I bought my first store in Tuckerman, Arkansas in 1997.  At that time, Bill's Super Foods, Inc. did not have a business credit history.  G&K Services approached us about doing business with them.  We investigated their program and made an agreement to rent rags from the company.  G&K Services required me to personally guarantee the invoices since we did not have a business credit history.  I do not, however, recall executing any form of personal guaranty and did not receive a copy.  If I did sign a guaranty, it would have been for the one original store.  No invoices have ever been delinquent during the relationship with G&K Services and after Bills Super Foods' credit history had been established there would have been no need for a personal guaranty.  Certain the business would be successful, I would have signed a personal guarantee to secure payment of invoices only.  The invoices were always paid in full by the business.  Currently, Bill's Superfoods, Inc. does not owe G&K Services as all invoices have been paid in full to date.

* * *

6.  I question the authenticity and terms of the guaranty that I purportedly signed on behalf of the original store of Bill's Super Foods.

(Docket entry #47, Ex. 1, Bill Orr Aff. at ¶¶ 4, 6.)

Defendant Orr's statements about whether he signed the Personal Guaranty are obtuse, evasive, and inconsistent with paragraph 5 of Defendants' Amended Answer to Plaintiff's Third Amended Complaint.  Defendants have presented no *evidence* that Defendant Orr did not execute the Personal Guaranty.  In fact, Defendants rely on various terms of the Personal Guaranty to argue that it does *not* create any liability for Defendant Orr on Plaintiff's liquidated damages claim.

Thus, Plaintiff's Statement No. 6 is deemed admitted by Defendants.

**2.**     **Plaintiff' Statement No. 11:**  Specifically, the Agreement addresses early termination of the Agreement prior to the completion of its five-year term in the "SERVICE GUARANTEE," which states, in relevant part: If Customer believes G&K has consistently failed to provide quality service as required under this Agreement, Customer may terminate this Agreement without penalty, provided that Customer first gives G&K written notice (sent by certified mail to address above) detailing such service deficiencies and G&K fails to resolve such deficiencies within sixty (60) days after G&K's receipt of such notice. Customer concerns shall be presumed resolved unless Customer gives G&K a second written notice detailing the continuing deficiencies within ten (10) days after expiration of such sixty (60) day

resolution period. Customer may then cancel this Agreement provided that all previous balances due to G&K are paid, rental items are returned to G&K in good and usable condition and replacement value is paid for lost/damaged rental items. Any interruption of G&K's usual operations, or delay or termination of the service provided for in this Agreement by reason of acts of God, fires, explosions, strikes or other industrial disturbances, or any other cause not within the control of G&K shall not be deemed a violation of the Service Guarantee set forth above. (See Complaint Exhibit 1; Wood Affidavit).  (Docket entry #46 at 2-3, ¶11.)

**Defendants' Response to Statement No. 11:** Dispute; The Agreement does address early termination of the Agreement prior to the completion of the five-year terms in the "Service Guarantee."  Defendants met with G&K service personnel on five (5) different occasions over a period of nearly five (5) months to state their dissatisfaction with the services being provided at which time notes were made. (See Invoices denoting "contract disputes," Exhibit 6). (See also, G&K General Manager Bill Harris' handwritten notes, Exhibit 8).  (Docket entry #49 at 4, ¶11.)

Plaintiff argues that Statement No. 11 should be deemed admitted because Defendants "engage in argument regarding its position that it orally communicated its complaints, but cites to no clear evidentiary support other than invoices that denote that credits were given to Defendant Bill's for 'contract disputes,' which would seem to indicate that the problems were rectified. Defendants' Statement 11 therefore does not contradict Plaintiff's Statement 11, and Plaintiff's Statement 11 should be deemed admitted."  (Docket entry #52 at 3.)

Defendants respond as follows:

G & K Services' Material Fact Statement 11 claims there is no evidentiary support for Bill's Super Foods' dispute to Statement 11.  As stated in every pleading by Defendants, Bill's personnel, Bill Orr, Wally Orr, and/or John Smith met with G & K Services' personnel on several different occasions to state their dissatisfaction with the services being provided at which time notes were made.  See Defendants' Response to Plaintiff's Renewed Motion for Summary Judgment, Affidavits of Bill Orr, Wally Orr and John Smith (Exhibits 1, 2 & 3).  As previously, stated, a plethora of Courts have held a "contract requirement that notice be in writing will not be strictly construed…when the evidence unequivocally establishes that the Plaintiff received oral notice of termination." *Oregon Portland Cement Co v. E. I. DuPont de Nemours & Co.*, 118 F. Supp. 603, 607 (P. Or. 1953); 17 A Am. Jur. 2d 518, Contracts § 544 (2004).  More specifically, Bill's Super Foods met with G & K Services' personnel on several occasions over a period of nearly five (5) months to

explain their dissatisfaction.  G & K's own invoices over a period of five (5) months and handwritten notes by G & K sufficiently demonstrate Bill's dissatisfaction with the quality of service provided by G & K Services.  The fact is therefore disputed.

(Docket entry #57 at 2-3.)

Plaintiff's Statement No. 11 is a direct quote from the "Service Guarantee" contained in the Service Agreement.  Defendants do *not* dispute that this is what the contract says.  Nonetheless, they proceed to "dispute" the Statement on the ground that they provided Plaintiff with adequate notice of their "dissatisfaction" with its performance under the Service Agreement.  This argument is utterly unresponsive to Plaintiff's narrow statement of undisputed facts in Statement No. 11, *i.e*, the contract says what it says.

Thus, Plaintiff's Statement No. 11 is deemed admitted by Defendants.

3.    **Plaintiff' Statement No. 12:** On May 4, 2007, while still receiving goods and services from G&K pursuant to the Agreement, Bill's entered into a contract with Aramark Uniform Services to provide the same goods and services provided by G&K. (See Defendant's Responses to Interrogatories and Requests for Production of Documents, Answer No. 5, Exhibit 3).  (Docket entry #46 at 3, ¶12.)

**Defendants' Response to Statement No. 12:** Dispute: Bill's Super Foods, Inc. entered into a contract with Aramark Uniform Services to provide the same goods and services previously provided by G&K Services.  The contract became effective May 25, 2007, which the is the actual  beginning date of services first received from Aramark.  Contrary to G&K's statement, the date for the price quote was May 4, 2007 and for locking the prices in at that particular quote.  Defendants locked the prices with Aramark only after attempts to persuade G&K Services to stop their deceptive practices and provide proper services were exhausted.  (Docket entry #49 at 4, ¶12.)

Plaintiff argues that Statement No. 12 should be deemed admitted because Defendants "admit[] the contract with Aramark was signed on May 4, 2007, but allege[], with no evidentiary support, that the Aramark contract was not effective until May 25, 2007. Such is not reflected on the Aramark contract. Thus the only evidence provided the Court on this issue establishes the truth of

11

Plaintiff's Statement 12."  (Docket entry #52 at 3.)

>Defendants respond as follows:
>
>Once again, although the contract indicated a May 4, 2007, date, the contract was held in the possession of Defendant and in abeyance until a later date after which services were first received from Aramark.  The date for the price quote was May 4, 2007, and for locking the prices in at that particular quote.  Defendants locked the prices with Aramark only after attempts to persuade G & K Services to stop their deceptive business practices and provide proper services were exhausted.  See Response to Plaintiff's Renewed Motion for Summary Judgment, Renewed Affidavit of John Smith, Exhibit 3.  The first transaction between Aramark and Bill's Super Foods occurred on June 11, 2007, sixteen (16) days after Defendants terminated the Service Agreement with G & K Services.  No contract was formed and deliveries were not made or received until after termination of G & K Services.

(Docket entry #57 at 3.)

Importantly, Defendants have previously produced to Plaintiff fully executed copies of the two Service Agreements between Defendant Bill's and Aramark. (Docket entry #44, Ex. 2, Defts' Responses to Pltf's Interrogatories and Requests for Production of Documents at 13-14.)  Inside the signature block on both Service Agreements someone has handwritten the "date of contract" to be "5-4-07." *Id.*  Thus, Plaintiff's Statement No. 12 simply recites the undisputed facts that are apparent on the face of the Service Agreement Defendants executed on May 4, 2007.

In attempting to dispute Plaintiff's Statement No. 12, Defendants rely on the Affidavit of John Smith, the Director of Perishables for Defendant Bill's. (Docket entry #47, Ex. 3, Smith Aff. at ¶2.)  In paragraphs 16 and 17 of his Affidavit, Smith states that: "Only after extended discussion with G&K Services broke down about the poor quality of service and the need to rectify the services, did I contact Aramark.  Bill's Super Foods signed a contract with Aramark on May 4, 2007, to lock in prices but the contract as a whole was not effective  until May 25, 2007. Bill's first Invoice from Aramark was June 11, 2007, sixteen (16) days after ending services with [G&K]."  (Docket

12

entry #47, Ex. 3, Smith Aff. at ¶15-16.)

Nothing in Smith's Affidavit disputes the facts in Plaintiff's Statement No. 12. Furthermore,

Smith affirmatively admits that Defendant Bill's executed the contract with Aramark on "May 4,

2007."

Thus, Plaintiff's Statement No. 12 is deemed admitted by Defendants to the extent that it

establishes Defendant Bill's and Aramark entered into Service Agreements on May 4, 2007.

4.   **Plaintiff's Statement No. 13:**  On May 25, 2007, Bill's orally notified G&K that it
was terminating the Agreement. (Wood Affidavit).  (Docket entry #46 at 3, ¶13.)

**Defendants' Response to Statement No. 13:** Dispute; Bill's Super Foods, Inc.
notified G&K Services on or about May 25, 2007, that it was terminating the
Agreement after five (5) months of deliberations and attempts to resolve the problem
areas associated with G&K Services' quality of  service and deceptive practices.
(See Affidavits of Wally Orr and John Smith and G&K Invoices denoting "contract
disputes" and "unit errors," Exhibits 2, 3, and 6). (Docket entry #49 at 4-5, ¶13.)

Plaintiff argues that Statement No. 13 should be deemed admitted because Defendants "in

substance admit the statement." (Docket entry #52.) Defendants respond by repeating their Response

to Statement No. 13.  (Docket entry #57 at 3-4.)

The Court is at a loss to understand how or why Defendants "dispute" Plaintiff's Statement

No. 13.  The Statement only seeks to establish that, on May 25, 2007, Defendant Bill's orally

notified Plaintiff that it was terminating the Service Agreement.  *Defendants admit this fact in their*

*Response.*  Their argumentative "justification" for orally terminating the Agreement in no way

creates any dispute about the fact that, "on May 25, 2007, Defendant Bill's orally notified G&K that

it was terminating the Agreement."

Thus, Plaintiff's Statement No. 13 is deemed admitted by Defendants.

13

**5.**     **Plaintiff's Statement No. 14**:  Bill's sent no written notification of problems or of its desire to terminate the Agreement prior to May 25, 2007. (See Bill's Responses to Requests for Admissions).  (Docket entry #46 at 3, ¶14.)

**Defendants' Response to Statement No. 14:**  Dispute; Bill's Super Foods, Inc. did not send written notification of problems or of its desire to terminate the Agreement other than notes taken during the numerous meetings with Plaintiffs on the various occasions that the Defendants' dissatisfaction with the service being provided was discussed, such notes and invoices being in both parties' possession.  Bill's Super Foods' personnel met face to face with G&K services' personnel to try and remedy the many problems affecting the business relationship between the parties over a period of five (5) months beginning the first week of January, 2007.  (See Affidavits of Wally Orr and John Smith and G&K Services Invoices denoting "contract disputes," "incorrect auto replace fee," "return credit," "unreturned," and "unit errors," Exhibits 2, 3, and 6).  (See also, G&K General Manager Bill Harris handwritten notes, Exhibit 8.)  (Docket entry #49 at 5, ¶14.)

Plaintiff argues that Statement No. 14 should be deemed admitted because Defendants indicate they "'dispute' but then admit[] the statement." (Docket entry #52 at 3.) Plaintiff also relies on Defendants' Responses to its Requests for Admissions.  In pertinent part, these Responses state the following:

PLAINTIFF'S REQUEST FOR ADMISSION NO. 4: Admit that prior to June 4, 2007, you had not sent any written correspondence or email to any employee of G&K informing G&K of any complaint of any kind.

DEFENDANTS' RESPONSE: Defendants admit that no written correspondence was forwarded to Plaintiff.  Defendants, however, deny that Plaintiff was not aware of complaints.  Mr. Bill Harris wrote personal notes on invoices during the meetings with Bill's Superfoods.

PLAINTIFF'S REQUEST FOR ADMISSION NO. 5: Admit that the Termination Letter[9] is a true and correct copy of a letter sent by Wally Orr on behalf of Bill's.

DEFENDANTS' RESPONSE: Admit, but deny that the letter is and/or should be defined as a "termination letter."

---

[9]The Requests for Admissions defined the "Termination Letter" as "the letter from Wally Orr to Chris Snyder dated June 4, 2007, a copy of which is attached hereto as Exhibit 1."  (Docket entry #44, Ex. 3 at 2.)

PLAINTIFF'S REQUEST FOR ADMISSION NO. 6: Admit that the Termination Letter was the only written notification ever sent to G&K from Bill's dealing with problems, termination, or cancellation of G&K's services to Bill's.

DEFENDANTS' RESPONSE: Defendants admit that the letter was the only written notification but deny that Plaintiff was not aware of or on notice of the continuous problems experienced by Defendants and deny the letter was or should be defined as a "Termination Letter."

* * *

PLAINTIFF'S REQUEST FOR ADMISSION NO. 13: Admit that Bill's did not, prior to June 4, 2007, send to G&K any written notification setting forth any needs, concerns, or problems relating to G&K's dealings with Bill's.

DEFENDANTS' RESPONSE: Defendants admit that nothing was in writing except for personal notes made by Bill Harris and provided in the Response to Requests for Production of Documents.

(Docket entry #44, Ex. 3 at 2-4.)

In an effort to create something in Statement No. 14 to "dispute," Defendants rely on: (1) Wally Orr's affidavit;[10] (2) John Smith's affidavit; (3) G&K invoices; and (4) the notes of G&K Manager Bill Harris. In Wally Orr's Affidavit, he states that he had personal meetings, conversations, and telephone calls with Plaintiff's personnel about problems with Plaintiff's service. However, Mr. Orr mentions *nothing* about Defendants having ever *sent Plaintiff* any "written notification of problems or of its desire to terminate the Agreement prior to May 25, 2007." In Smith's Affidavit, he: (1) authenticates copies of Plaintiff's invoices from January to May 2007; (2) establishes that some invoices "note 'contract dispute,' 'incorrect auto replace fee,' 'return credit,' and 'unreturned'"; and (3) authenticates "handwritten notes taken by Bill Harris," *one of Plaintiff's employees*, in a meeting held on January 22, 2007, between the local G&K Services office and

---

[10]Wally Orr is a Store Manager and the Secretary-Treasurer of Defendant Bill's. (Docket entry #47 Ex. 2, Wally Orr Aff. at ¶2.)

employees of Defendant Bill's.  According to Smith, "[t]hese notes [by Harris] specifically reflect the dissatisfaction of Bill's Super Foods with the billing issues and inventory."  (Docket entry #47, Ex. 3, Smith Aff. at ¶¶ 12-14.)

The invoices referenced in Smith's Affidavit are Plaintiff's own invoices addressed to Defendant Bill's.  (Docket entry #47, Ex. 6.)  They reflect Plaintiff's charges for items, line by line. In some instances, the invoices credit back certain line-item charges, and note a "contract dispute" or a "unit price error."[11]  The "handwritten notes of Bill Harris" appear on one of Plaintiff's invoices and some sheets of paper with various handwritten strike-throughs, numbers, quantities, prices, and other writing.  (Docket entry #47, Ex. 8.)

At most, Defendants have established that: (1) Plaintiff was aware that Defendants had "problems" with its performance under the contract; (2)  Plaintiff was aware of these "problems" prior to May 25, 2007; and (3) these "problems" were "in writing" to the extent that they were reflected on *Plaintiff's invoices* or in notes of *one of Plaintiff's employees*.  However, none of this evidence establishes that *Defendants sent Plaintiff* any "written notification of problems or of its desire to terminate the Agreement prior to May 25, 2007."  *Presumably, this is why Defendants admitted this very fact in their responses to Plaintiff's requests for admissions*.  Of course, it in no way explains why Defendants now dispute the *same facts* in response to Plaintiff's Statement No. 14.

Thus, Plaintiff's Statement No. 14 is deemed admitted by Defendants.

---

[11]A typical example is:
      Swing Suit, DX BINON, LT BLUE     $0.90
       Contract Dispute          ($0.90)
(Docket entry #47, Ex. 6.)

6.   **Plaintiff's Statement No. 15:**   The only correspondence Bill's sent to G&K regarding a complaint of any kind was sent on June 4, 2007. (See Bill's Responses to Requests for Admissions).  (Docket entry #46 at 3, ¶15.)

**Defendants' Response to Statement No. 15:** Dispute; the only formal written correspondence sent to G&K Services regarding complaints was sent on June 4, 2007. Bill's Super Foods had several formal meetings with G&K Services to discuss the poor quality of service and the allegations in the general.  (See Affidavits of Wally Orr and John Smith, Invoices denoting "contract disputes," "incorrect auto replace fee," "return credit," "unreturned," and "unit errors," Exhibits 2, 3 and 6 and Wally Orr's letter to G&K Services' in house counsel). (Docket entry #49 at 5, ¶15.)

Plaintiff argues that Statement No. 15 should be deemed admitted because Defendants admit that the only "formal written" correspondence was sent on June 4, 2007.  (Docket entry #52 at 4.)

Defendants respond as follows:

Bill's Super Foods sent a letter to G & K Services regarding complaints on June 4, 2007, but it was not the only communication, written or oral.  Attached to John Smith's Supplemental Affidavit are copies of G & K Services' Invoices which state clearly "Contract Dispute," "Auto Replace," "Return-Credit," and "Unit Price Error." See Defendants' Response to Plaintiff's Renewed Motion for Summary Judgment, Exhibit 6.

(Docket entry #57 at 4.)

As previously explained, *Plaintiff's own employee*, Mr. Harris, made the notations on the invoices that are referenced in Smith's Affidavit.  Plaintiff's Statement No. 15 is limited to "correspondence *Bill's sent* to G&K regarding a Complaint of any kind . . ."  Mr. Harris's handwritten notes on G&K invoices in no way qualifies as a document *Defendant Bill's sent* to G&K.

Thus, Plaintiff's Statement No. 15 is deemed admitted by Defendants.

7.   **Plaintiff's Statement No. 18**:  At the time Bill's terminated service with G&K, 224 weeks remained in the term of the Agreement. (Wood Affidavit).  (Docket entry #46 at 3-4, ¶18.)

**Defendants' Response to Statement No. 18:** Dispute; At the time Bill's Super

> Foods, Inc. terminated service with G & K Services, 224 weeks remained on the new contract even though the existing contract had not expired in the term of the Service Agreement. Defendants dispute the number of weeks remaining as other contracts were still in effect. Defendants believe and affirmatively state the poor quality of the service provided to them by Plaintiff was of such a nature that early termination was the only option available to them.

(Docket entry #49 at 6, ¶18.)

Plaintiff argues that Statement No. 18 should be deemed admitted because Defendants' dispute the statement, but then *admit*, that "224 weeks remained on the new contract."

Defendants respond by making the following disjointed and factually unsupported argument:

> G & K Services Material Fact Statement 18 should not be admitted as G & K Services fraudulently induced Bill's Super Foods, Inc. to enter into new agreements when earlier Service Agreements were still in effect and had yet to expire. Defendants once again affirmatively state the poor quality of the service provided to them by Plaintiff was of such a nature that early termination was the only option available to them. Defendants will supplement their Affidavits as it has only recently become clear that G & K Services was in material breach of the 2003 Service Agreement. It now appears that G & K Services fraudulently induced Bill's Super Foods into entering into a new Service Agreement despite the two (2) years remaining on the 2003 Service Agreement. Bill's disputes the time remaining in the 2006 Service Agreement. See Affidavits of Bill Orr, Wally Orr, and John Smith, Exhibits 1, 2 and 3.

(Docket entry #57 at 4.)

Plaintiff's Statement No. 18 seeks only to establish that, as of the date Defendants terminated the Service Agreement on May 25, 2007, 224 weeks remained on that contract. In their Response to Statement No. 18, Defendants *admit* that 224 weeks remained on the Service Agreement, but then engage in legal argument about why they should not be liable under the Service Agreement. This liability argument is in no way relevant to whether 224 weeks remained on the Service Agreement at the time the contract was terminated. Furthermore, in Defendants' Response disputing Statement No. 18, they *admit* this calculation is correct.

18

Thus, Plaintiff's Statement No. 19 is deemed admitted by Defendants.

8.    **Plaintiff's Statement No. 19**:  The average weekly invoice amount being received by G&K from Bill's at the time of the termination was $702.49. (Wood Affidavit). (Docket entry #46 at 4, ¶19.)

**Defendants' Response to Statement No. 19:**  Denied; The average weekly invoice amount being received by G & K Services from Bill's Super Foods at the time of the termination was no more than $500.00.  The amount represented, i.e., $702.49, is based on incorrect and erroneous billing by G & K Services.  (See Affidavit of John Smith, Exhibit 3).  (Docket entry #49 at 6-7, ¶19.)

Plaintiff argues that Statement No. 19 should be deemed admitted because Defendants offer no proof to establish that the average weekly invoice amount did not exceed $500.  (Docket entry #52 at 4.)  Defendants respond as follows:

The average weekly invoice amount being received by G & K Services from Bill's Super Foods at the time of the termination was no more than $500.00.  G & K Services' estimate is based on a store not owned by Bill's Super Foods at the time of the termination of the Service Agreement as well as a store that G & K Services personally chose to discontinue providing service to in addition to incorrect billing amounts.  See Affidavits of Wally Orr and John Smith, Exhibits 2 and 3 respectively. In their Affidavits, Orr and Smith specifically set forth the inaccuracies and flaws of Wood's purported calculations.

(Docket entry #57 at 4.)

To support its contention that the facts in Statement No. 19 are undisputed, Plaintiff relies on the Affidavit of Leslie Wood, one of its general managers.  In her Affidavit, she states that "[t]he average weekly invoice amount being received by G&K from Bill's at the time of termination was $702.49."  (Docket entry #44, Ex. 1 Wood Aff. at ¶ 5.)

Defendants rely on the following statement in the Affidavit of John Smith to dispute these facts:

"The average weekly invoice incurred by Bill's Super Foods could not be $702.49 because of the incorrect and erroneous billings on the part of G&K Services.  A large

19

percentage of G&K Services' revenue from Bill's Fresh Market was due to incorrect inventory , erroneous billing, bogus charges, double invoicing, double fees, random charges, non-contracted billing and extra charges.  G& K Services Complaint' includes Bill's Super Foods' location at 5514 Stadium Boulevard, Jonesboro, Arkansas, which was sold on or about April, 2007.  In addition, the Complaint also includes the Marked Tree, Arkansas location which G&K Services voluntarily quit servicing prior to the termination of the Service Agreement.  The amounts in question cannot be accurate as they reflect these two locations.  In addition, inventory and billing was not corrected.  Invoices will show proof of billing issues and contract disputes."

(Docket entry #47 Ex. 3, Smith Aff. at ¶¶ 9-10.)

The Court concludes that Smith's Affidavit provides an adequate evidentiary basis for Defendants' denial of Statement No. 19.  Thus, Statement No. 19 is *not* deemed admitted by Defendants.

9.    **Plaintiff's Statement No. 20:** Applying the formula as set forth in the Agreement, Bill's owes liquidated damages in the amount of $78,678.68.  (Wood Affidavit). (Docket entry #46 at 4, ¶19.)

**Defendants' Response to Plaintiff's Statement No. 20:** Denied; Applying the formula as set forth in the Agreement, Bill's does not owe liquidated damages and considering G & K Services' breaches of the Agreement and deceptive trade practices.  Such a provision is in effect an unjustified penalty.  In addition, the particular figure is based on flawed and inaccurate calculations.  (See Affidavits of Wally Orr and John Smith, Exhibits 2 and 3 respectively)  As stated elsewhere, less than two (2) years remained on a contract in place during 2006 and before G & K Services personnel fraudulently induced Bill's Super Foods to enter into a new Services Agreement.  (Docket entry #49 at 7, ¶20.)

Plaintiff argues that Statement No. 20 should be deemed admitted because Defendants make a "conclusory argument that G&K is not entitled to damages, unsupported by any reference to evidence.  This does not disprove the accuracy of the calculation."  (Docket entry #52 at 4.)

Defendants respond as follows:

Leslie Wood, G & K Representative, based her formula on "new customer contract" and "new textiles" ordered for the customer.  It should be based on the same textiles that have been in use for more than 48 months at the same locations since Bill's

Super Foods had been using the same floor mats and other products and had not ordered any new textiles.  The new contract Leslie Wood refers to is an overlap of an existing contract.  See Affidavit of John Smith, Exhibit 3.  Bill's Super Foods has addressed the issue that the 2003 Service Agreement in effect at the time was materially breached by G & K Services for deceptive practices.  Bill's will also show that the calculations are inaccurate and flawed.

(Docket entry #57 at 5, ¶20.)

For the same reasons discussed by the Court in denying Plaintiff's request to have Statement No. 19 deemed admitted, it will also *deny* Plaintiff's request to have Statement No. 20 deemed admitted.  In addition, to the extent that Statement No. 20 seeks to establish the amount Defendant Bill's "owes," Plaintiff is stating a *legal conclusion* that goes to the merits of its breach of contract claim. Such a statement of law has no place in a Statement of Undisputed Fact.

10. **Plaintiff's Statement No. 21**:  Pursuant to the Agreement, G&K is also entitled to recover its reasonable attorneys' fees incurred in collection of the amounts due it. (Wood Affidavit).  (Docket entry #46 at 4, ¶21.)

**Defendants' Response to Statement No. 21:**  Denied; Pursuant to the Agreement, G & K Services is not entitled to recover its reasonable attorney fees incurred in collection of the amounts due it as no amounts are due, and Defendants dispute the authenticity of the purported personal guaranty and demand the best evidence, i.e., the original document.  To the contrary, since G & K Services breached the Service Agreement, Bill's Super Foods is entitled to recover reasonable attorney's fees. (Docket entry #49 at 7.)

Plaintiff argues that Statement No. 21 should be deemed admitted because "Defendant denies, simply stating, without any evidentiary support, that G&K is not entitled to recovery." (Docket entry #52 at 5.)  Defendants respond as follows:

Plaintiff's Material Fact Statement 21 should not be admitted.  Defendants affirmatively denied this assertion.  Once again, G & K Services is not entitled to recover attorney fees as G & K Services is in breach of the Service Agreement, Defendants properly terminated the Agreement, no amounts are due, and Defendants dispute the scope and authenticity of the purported personal guaranty and demand the best evidence, i.e., the original document. See Affidavits of Bill Orr, Wally Orr, and John Smith,  Exhibits 1, 2 and 3 respectively to Defendants' Response to

21

Plaintiff's Renewed Motion for Summary Judgment.

(Docket entry #57 at 6.)

Under Arkansas law, a prevailing party in a breach of contract action may recover its reasonable attorneys' fees and expenses.[12]   However, the issue of recoverability of attorneys' fees and expenses is a question of law that is not appropriate for inclusion in a Statement of Undisputed Facts.   Thus, Plaintiff's Statement No. 21 is *not* deemed admitted by Defendants.

> **11.** **Plaintiff's Statement No. 23.**  Bill's was one of a class of plaintiffs in a class action in the Circuit Court of Barbour County, Alabama, styled In Re Textile Rental Services Litigation, Case No.: CV-05-19 ("the Class Action"). (See Bill's Responses to Requests for Admissions; Class Action Settlement Order).  (Docket entry #46 at 4, ¶23.)
>
> **Defendant's Response to Statement No. 23:** Dispute; Bill's Super Foods did not participate in the class action litigation.  (Docket entry #49 at 7, ¶23.)

Plaintiff argues that Statement No. 23 should be deemed admitted because Defendants state that they "did not participate in the class action litigation," without citing evidentiary support. (Docket entry #52 at 5.)  Defendants respond as follows:

> G & K Services' Material Fact Statement 23 should be denied.  Bill's Super Foods did not participate in the class action litigation.  See Affidavit of Wally Orr, Exhibit 2; See also, Defendants' Sur-Reply IV (d) and argument.

(Docket entry #57 at 6.)

In Defendants' Responses to Plaintiff's Requests for Admission, they state the following:

> PLAINTIFF"S REQUEST FOR ADMISSION NO. 9: Admit that Bill's received a written notice of a certain class action in the Circuit Court of Barbour County, Alabama, styled: In Re Textile Rental Services Litigation, Case No. CV-05-19 ("the

---

[12]In addition, the Service Agreement contains language that allows Plaintiff to recover its reasonable attorneys' fees and expenses if Defendants are found to have breached the contract.

Class Action").

DEFENDANTS' RESPONSE: Admit.

PLAINTIFF'S REQUEST FOR ADMISSION NO. 10: Admit that Bill's did not exercise its right to opt out of the Class Action.

DEFENDANTS' RESPONSE: Admit.

PLAINTIFF'S REQUEST FOR ADMISSION NO. 11: Admit that pursuant to the Class Action, Bill's received coupons from the Class Action settlement administrator, which could have been used for payment of certain goods/services from G&K.

DEFENDANTS' RESPONSE: Deny.

((Docket entry #44, Ex. 3 at 3-4.)

Plaintiff's Statement No. 23 does *not* state that Defendant Bill's "participated in" the Alabama class action litigation.  It states only that Defendant Bill's was a *member of the class* in the Alabama litigation.  Thus, on its face, Defendants' Response to Plaintiff's Statement No. 23 is indirect and evasive.

As evidentiary support for their denial, Defendants rely on the Affidavit of Wally Orr, who opines that, based upon his review of the Class Action Settlement Agreement attached to Plaintiff's summary judgment papers, it was obligated to "issue a Disclosure Statement to all customers either stated on invoices or some other written communication explaining service charges.  G&K Services failed to follow this requirement when we entered the Service Agreement in September, 2006."[13]

---

[13]Wally Orr also states that he "has reviewed the Affidavit of Amy Lake" (docket entry #44, Ex. 7, Aff. of Amy Lake at ¶1), who was responsible for supervising the class action administration services.  (Docket entry #47, Ex. 2, W. Orr. Aff. at ¶19.) According to Lake, on October 13, 2006, 1,176,065 Notices of Settlement were mailed, including "Notices addressed to the following business: Bills Fresh Market Express, 5514 Stadium Blvd., Jonesboro, AR 72404-8655, and Bill's Superfoods, PO Box 1312, Tuckerman, AR 72473-1312." *Id.* at ¶5.  A "Summary Notice" was also published in USA Today on October 19, 2006. *Id.* at ¶6.

(Docket entry #47, Ex. 2, W. Orr. Aff. at ¶15.)  By attempting to interpret  Plaintiff's obligations to Defendants under the Class Action Settlement Agreement, Mr. Orr seems to suggest that Defendant Bill's was a member of the plaintiff class. More importantly, however, Defendants' *admit* in their Responses to Plaintiff's Requests for Admissions Numbers 9, 10, and 11 *that they did receive written notice of the Alabama Class Action and that they did not opt out of that litigation*.

The only conclusion that can be drawn from Defendants' Response to Plaintiff's Requests for Admissions is that Defendant Bill's was a class member in the Alabama class action litigation filed against Plaintiff.  Thus, Plaintiff's Statement No. 23 is deemed admitted by Defendants.

> **12.**   **Plaintiff's Statement No. 25**: Though provided notice of the Class Action, and the opportunity to opt out of the Class Action, Bill's did not opt out. (See Bill's Responses to Requests for Admissions).  (Docket entry #46 at 4, ¶25.)
>
> **Defendants' Response to Statement No. 25:**  Dispute; Bill's Super Foods did not participate in a class action lawsuit in any regard.  (Docket entry #49 at 8, ¶25.)

Plaintiff argues that Statement No. 25 should be deemed admitted.  For the same reasons stated in finding that Plaintiff's Statement No. 23 is deemed admitted, the Court concludes that Statement No. 25 is also deemed admitted by Defendants.

> **13.**   **Plaintiff's Statement No 26**:  Plaintiff's Statement No 26: In the Class Action, the plaintiffs therein sought redress for the same type charges labeled by Bill's here as "phantom" and "bogus," and which form the basis for Bill's Counterclaim. (See Class Action Settlement Order; Defendant's Amended Counterclaim). (Docket entry #46 at 4, ¶26.)
>
> **Defendants' Response to Statement No. 26:** Dispute; Bill's Super Foods seeks claims against G & K Services for Breach of Contract, deceptive trade practices, unjust enrichment, breach of implied contract to exercise duty of good faith and fair

---

Mr. Orr goes on to state that: (1) "Bill's Fresh Market Express" "is an entirely independent corporation separate and apart from Bill's Super Foods, Inc."; and (2) Bill's Super Foods' "Tuckerman location is not the corporate office but rather a satellite retail office and there is no record of ever receiving the purported notices." (Docket entry #47, Ex. 2, W. Orr. Aff. at ¶15.)

dealing, and monies paid by mistake.  The allegations forming the Counterclaim are not based on the same legal theories or factual predicates as asserted by G & K Services in raising a res judicata defense.  (Docket entry #49 at 8, ¶26.)

Plaintiff argues that its Statement should be deemed admitted because:

Defendants' response states "Dispute," and lists the causes of action asserted in its Amended Counterclaim. However, a close reading of the allegations of the Amended Counterclaim makes clear that, with the exception of a couple of allegations in Counts 1, 2, and 6, all other claims are predicated entirely on Ancillary Charges as defined in the Class Action Settlement Order. This is discussed in detail in Section IV.B. 2. of [Plaintiff's] Brief in Support of Renewed Motion for Summary Judgment. [Plaintiff's] Statement 26 is an accurate statement[.]

(Docket entry #52 at 6.)  Defendants respond as follows:

G & K Services' Material Fact Statement 26 should not be deemed admitted. Defendants affirmatively dispute this assertion.  Once again, for reasons discussed in Defendants' Sur-reply IV (D), the statement should not be deemed admitted. See Parklane Hosiery Co. v. Shore, 439 U. S. 322, 327 n. 5 (1979).  The issue of what constitutes fraudulent charges overlaps and is unable to be properly distinguished from Plaintiff's arguments thus precluding certification.

(Docket entry #57 at 6-7.)

Plaintiff's Statement No. 26 asserts a legal conclusion, rather than a proper statement of undisputed *facts*.  For that reason, the Court concludes that Plaintiff's Statement No. 26 is *not* deemed admitted by Defendants.

14.   **Plaintiff's Statement No. 27**: The Class Action was settled by Order dated January 23, 2007, and by the terms of the Class Action Settlement Order, all class members, including Bill's, were permanently enjoined from "commencing, prosecuting, continuing, or assisting" in any action against any "Settling Defendant," which included G&K, "based on, arising out of, or relating in any way to any Ancillary Charge" as defined by the Settlement Agreement approved by the Class Action Settlement Order. (See Class Action Settlement Order).  (Docket entry #46 at 4, ¶26.)

**Defendants' Response to Statement No. 27**: Dispute; Notwithstanding, G & K Services has failed to abide by the Class Action Settlement Order by failing to define charges or generate disclosure statements (Plaintiff's Exhibit 4, page 30).  Further, Defendants' Counterclaim has nothing to do with the merits of the Class Action

Settlement Order.  Bill's Super Foods is not restricted in its Counterclaim as the class periods for G & K Services ended July 1, 2006, (Plaintiff's Exhibit 4 to Motion for Summary Judgment).  Further, it appears G & K Services renewed its Service Agreements as a result of the litigation to manipulate the re-signing of existing contracts which had yet to expire and for which they were in material breach. (Docket entry #49 at 8, ¶27.)

Plaintiff argues that Statement No. 27 should be deemed admitted because Defendants "actually do[] not dispute the statement, but instead accuse[] G&K of failing to comply with the Class Action Settlement Order, and make[] additional allegations against G&K, all without any evidentiary support. G&K has addressed the allegation of non-compliance with the Class Action Settlement Order in Section IV. D. of its Reply to Response to Renewed Motion for Summary Judgment."  (Docket entry #52 at 6.)

Defendants respond as follows:

Bill's Super Foods stands by its earlier assertions and has addressed this issue in Section IV (D) of its accompanying Sur-reply.  Notwithstanding, G & K Services has failed to abide by the Class Action Settlement Order by failing to define charges or generate disclosure statements (Plaintiff's Exhibit 4, page 30).  Further, Defendants' Counterclaim has nothing to do with the merits of the Class Action Settlement Order. Bill's Super Foods is not restricted in its Counterclaim as the class periods from Plaintiff's arguments for G & K Services ended July 1, 2006 (Plaintiff's Exhibit 4 to Renewed Motion for Summary Judgment).  Further, it appears G & K Services renewed its 2003 Service Agreements with Bill's Super Foods as a result of the litigation to manipulate the re-signing of existing contracts which had yet to expire.

(Docket entry #57 at 7.)

Plaintiff's Statement No. 27 is *not* deemed admitted for the same reason stated by the Court in denying Plaintiff's request to have Statement No. 26 deemed admitted.

15.   **Plaintiff's Statement No. 28:**  The Settlement Agreement defined "Ancillary Charges" as: (c) Ancillary Charges: Any and all charges that appeared on any invoice as separate charges, excepting only charges based on unit prices for goods and services, that any Current Customer or Former Customer of any Settling Defendant paid to any Settling Defendant during the Class Period. Without limiting the preceding definition in any way, and by way of examples only, the following are

Ancillary Charges: "Abused Linen Charge," "Automatic Loss Charge," "Cabinet Rental Charge," "DEFE (Delivery, Environment, Fuel and Energy) Charge," "Delivery Charge," "Deposit," "Ecological Charge," "Ecological Fee," "Emblem Charge," "Embroidery Charge," "Energy Charge," "Environmental Charge," "Environmental Waste Water Charge," "Environmental/Delivery Charge," "Fuel Charge," "Fuel and Energy Charge," "Garment Preparation Charge," "Hazardous and Regulatory Compliance Charge," "Hazardous Materials Charge," "Hamper Rental Charge," "Handling Charge," "Hazardous Materials Handling Charge," "Hazmat Regulatory Charge," "Inventory Maintenance Charge," "Inventory Minimum Charge," "Inventory Minimum Differential Charge," Locker Rental Charge," "Loss and Abuse Charge," "Lost Linen Charge," "Minimum Delivery Charge," "Out Sizes Charge," "Prep. Charge," "Processing Charge," "Regulatory Compliance Charge," "Replacement Charge," "Restocking Charge," "Service Charge," "Set-Up Charge," "Shelf Inventory Charge," "Special Cut Charges," "Stop Minimum Charge," "Swing Set Charge," Systematic Replacement Charge," "Temporary Energy Surcharge," "Towel Replacement Charge," "Variable Energy Charge," "Waste Water Charge," "WW Charge," "Wiper Replacement Charge," any charge that contains an environment-related term or abbreviation; and any other charge similar in name or purpose to the preceding terms and abbreviations. (See Settlement Agreement). (Docket entry #46 at 5, ¶28.)

**Defendants Response to Statement No. 28:**  Dispute; Bill's Super Foods does not dispute the purported language but denies they are covered by the particular class period.  (Docket entry #49 at 8, ¶28.)

Plaintiff argues that Statement No. 28 should be deemed admitted because Defendants do not dispute the language, "but deny that they are covered by the language."  (Docket entry #52 at 6.)

Defendants respond as follows: " Defendants are not covered by the Class period put forth in Plaintiff's allegations and Rule 56.1 Motion and for reasons addressed in Section IV (D) of their accompanying Sur-reply."  (Docket entry # 57 at 7.)

Defendants' response to Statement No. 28 is evasive and unresponsive.  Plaintiff's Statement No. 28 is simply a recitation of the definition of "Ancillary Charges" in the Class Action Settlement Agreement. Furthermore, Defendants do not dispute that the Class Action Settlement Agreement contains the recited language.

27

Thus, Plaintiff's Statement No. 28 is deemed admitted by Defendants.

16.     **Plaintiff's Statement No. 29:** The "phantom" and "bogus" charges as alleged by Bill's, and which are the basis for the bulk of its claims in its Counterclaim, are the same type charges defined in the Class Action Settlement Agreement as an "Ancillary Charge." (See Settlement Agreement; Amended Counterclaim). (Docket entry #46 at 5, ¶29.)

**Defendants' Response to Statement No. 29:** Denied; Bill's Super Foods denies this allegations for reasons stated earlier and herein. Defendants affirmatively state the class period for G & K Services in connection with the Settlement Agreement closed July 1, 2006, (Plaintiff's Exhibit 4, page 15 of Plaintiff's Motion for Summary Judgment). (Docket entry #49 at 8-9, ¶29.)

Plaintiff argues that Statement No. 29 should be deemed admitted because Defendants offer "no evidentiary support" for their Responses to this Statement and because their Amended Counterclaim seeks damages beginning in 2003. (Docket entry #52 at 6-7.)

Defendants argue that:

[T]he claims made in the Counterclaim were not previously litigated and are based on different "transactional facts" than were purportedly asserted in the class action lawsuit. Although Defendants dispute the allegations are barred by res judicata, Defendants affirmatively state the class period for G&K Services in connection with the Settlement Agreement states that it closed July 1, 2006. (Plaintiff's Exhibit 4, page 15 of Plaintiff's Renewed Motion for Summary Judgment).

(Docket entry #57 at 7-8.)

The language used by Plaintiff in Statement No. 29 is vague (*e.g.*, the "bulk of its claims in its Counterclaim," "the same type charges,") and states a legal conclusion about the preclusive effect of the Class Action Settlement Agreement on Defendants' Counterclaim. For those reasons, Plaintiff's Statement No. 29 is *not* deemed admitted by Defendants.

17.     **Plaintiff's Statements Nos. 30-34**

**Plaintiff's Statement No. 30:** The contract that Bill's signed with Aramark Uniform Services on May 4, 2007, contains a liquidated damages provision. (See Defendant's Responses to Interrogatories and Requests for Production of Documents, Answer No.

5, Exhibit 3).

**Plaintiff's Statement No. 31:**  The liquidated damage provision in the Agreement is typical in the textile rental business. (See Supplemental Affidavit of Leslie Wood).

**Plaintiff's Statement No. 32:** A myriad of factors make ascertainment of an accurate forecast of damages suffered by virtue of the breach of the Agreement impossible to make. (See Supplemental Affidavit of Leslie Wood).

**Plaintiff's Statement No. 33:** After July, 2006, no G&K invoice to Bill's contained a charge denoted as "Service Charge." (See Supplemental Affidavit of Leslie Wood).

**Plaintiff's Statement No. 34:**  On October 13, 2006, notices of the Class Action were mailed to Bills Fresh Market Express, 5514 Stadium Blvd., Jonesboro, AR 72404-8655 and to Bill's Super Foods, PO Box 1312, Tuckerman, AR 72473-1312. (See Affidavit of Amy Lake).

(Docket entry #46 at 5-6, ¶¶ 30-34.)

As previously mentioned, in filing their January 23, 2009 Responses to Plaintiff's Statement of Undisputed Facts, Defendants failed to address Statements 30 through 34.  After Plaintiff moved to have its Statements of Undisputed Facts deemed admitted, Defendants filed a "Supplemental Response" to Plaintiff's Statement of Undisputed Facts which disputed Statements Nos. 30-34. (Docket entry #55.)

Plaintiff argues that Statements Nos. 30-34 should be deemed admitted based on Defendants' failure to file timely responses to them.  *See* Local Rule 56.1(b).  (Docket entry #52.) In Defendants' Response to Plaintiff's Motion to Deem Admitted, they acknowledge that, due to an "oversight," they failed to timely respond to Statements Nos. 30-34.  (Docket entry #56 at 1, ¶2.)

After Plaintiff called this matter to their attention in its January 28, 2009 Motion to Deem Admitted, Defendants promptly filed their "Supplemental Response" on February 4, 2009.  Under these circumstances, the Court concludes that Plaintiff was not prejudiced by Defendants' late filing of their Supplemental Response.  Accordingly, Plaintiff's Statements 30-34 are *not* deemed admitted

by Defendants.  *See Satcher v. Board of Trustees,* 2008 WL 906692, *1 (E.D. Ark. Apr. 1, 2008)

(unpublished decision) ("Although the Plaintiff failed to timely controvert the Defendants' Statement

of Facts, the Court will accept the Plaintiff's Statement of Disputed Facts."); *Mountain Pure LLC*

*v. Bank of America, N.A.*, 2006 WL 827378, *1 n.1 (E.D. Ark. Mar. 28, 2006) (unpublished decision

rev'd in part on other grounds, 481 F.3d 573 (8th Cir. 2007)) ("Although defendant argues that the

Court should not consider plaintiffs' Local Rule 56.1 statement since it was filed 28 days after their

response was filed and was after defendant had asked the Court to deem the facts in its Local Rule

56.1 statement admitted, the Court is persuaded that defendant is not prejudiced by the late filing.")

**B.      Defendants' Motion for Extension of Time to Complete Discovery and File Dispositive Motions (docket entry #61)**

On April 6, 2009, Defendants filed a Motion requesting an extension of the discovery cutoff

until June 1, 2009, and an extension of the deadline for filing dispositive motions until June 15,

2009.  (Docket entry #61.)  In support of this Motion, Defendants state that: (1) at an unspecified

time "subsequent to" the Court's February 2, 2009 Order extending these deadlines, the parties

served each other with additional written discovery requests, including  written discovery "in

connection with Plaintiff's claim for damages"; and (2) depositions were conducted on March 3-4,

2009, and counsel for the parties "agreed a second round of abbreviated depositions would be

necessary in the near future and after an opportunity to review responses to the damage claims and

previous depositions."  (Docket entry #61 at ¶¶ 3-4.)

Plaintiff does not oppose a discovery extension "for the very limited purpose of following

up on information which parties [sic] were unable to produce within the previously extended

discovery period," but opposes an extension of the deadline for filing dispositive motions.  (Docket

entry #65.)  In their Reply, Defendants allege that  Plaintiff has drawn out the discovery process by

30

refusing to answer reasonable discovery, and contend that additional discovery is necessary to determine whether Plaintiff's contractual liquidated damages provision is "proper and relevant or is an unenforceable penalty." (Docket entry #70.)

As indicated earlier, in the Court's June 3, 2008 Order, it made it clear that, while discovery could be *voluntarily conducted* after the discovery cutoff deadline, the Court would *not* be available to resolve any disputes arising in connection with such discovery. (Docket entry #15.) Thus, the fact that the parties have voluntarily engaged in discovery, after the discovery cutoff, is *not* a basis for seeking to extend the discovery cutoff.

Defendants also suggest that, because Plaintiff has been dilatory in responding to discovery, the discovery cutoff deadline should be extended. However, Defendants have not established that the discovery cutoff deadline (which has already been extended once by the Court) failed to provide the parties with adequate time to conduct discovery and to resolve any discovery disputes on a timely basis.

Third, Defendants argue that additional time is needed to conduct discovery into Plaintiff's liquidated damages claim. Of course, the need for Defendants to conduct discovery on the issue of liquidated damages has been apparent since this lawsuit was filed. Defendants offer no explanation for their failure to conduct this discovery before the expiration of the discovery cutoff deadline.

Finally, the Court finds it telling that Defendants filed their Motion for Extension of Time on April 6, 2009, a number of weeks *after* the discovery cutoff had expired on March 16, 2009. Thus, Defendants' Motion for Extension of Time to Complete Discovery and File Dispositive Motions is denied.

**C.     Plaintiff's Motion to Compel Discovery (docket entry #66)**

On April 9, 2009, Plaintiff filed a Motion to require Defendants to respond to its Second Set of Interrogatories and Requests for Production of Documents, which were served on February 9, 2009. (Docket entry #66 at ¶1.) Despite conferring in good faith with opposing counsel "by email," Plaintiff claims that the discovery has gone unanswered. Plaintiff requests that Defendants be compelled to provide responses, and for an award of attorney's fees and costs.

In their Response, Defendants point out that their Answers to Plaintiff's Second Set of Interrogatories and their Response to Plaintiff's Request for Production of Documents "were mailed over the weekend of week [sic] ending April 4, 2009[.]" (Docket entry #69.)

Because Defendants appear to have responded to the discovery which is the subject of Plaintiff's Motion to Compel, the Court concludes that this Motion is denied, as moot.

**D.      Plaintiff's Motion to Strike Defendants' Response to Plaintiff's Supplemental Statement of Material Facts Pursuant to Local Rule 56.1 and Defendants' Response to Plaintiff's Supplement to Brief in Support of Renewed Motion for Summary Judgment (docket entry #68)**

In the Court's February 2, 2009 Order, the parties were advised that they could supplement their pending summary judgment pleadings no later than March 30, 2009. (Docket entry #53.) On March 30, 2009, Plaintiff filed a "Supplement to Brief in Support of Renewed Motion for Summary Judgment," and a "Supplement to Statement of Material Facts Pursuant to Local Rule 56.1 As To Which Plaintiff Contends There Is No Genuine Issue To Be Tried." (Docket entries #59 and #60.)

On April 8, 2009, Defendants filed a "Response to Plaintiff's Supplement to Brief in Support of Renewed Motion for Summary Judgment," and a "Response to Plaintiff's Supplemental Statement of Material Facts Pursuant to Local Rule 56.1 As to Which Plaintiff Contends There Is No Genuine Issue To Be Tried." (Docket entries #63 and #64.)

In Plaintiff's Motion to Strike (docket entry #68), it argues that the Court should strike

32

Defendants' responsive pleadings because they were filed after the March 30, 2009 deadline in the Court's February 2, 2009 Order.   In making this argument, Plaintiff ignores the fact that its supplemental pleadings in support of its Second Motion for Summary Judgment had to be filed *before* Defendants could file their responses.   Under the Local Rules, Defendants had eleven days, from the date Plaintiff filed its supplemental pleadings, to file their Response.   *See* E.D. Ark. Local Rule 7.2(b).   Because Defendants' April 8, 2009 Responses were *timely filed*, Plaintiff's Motion to Strike is denied.

**E.      Defendants' Motion to Compel Discovery (docket entry #72)**

Defendants request that the Court compel Plaintiff to respond to their Second Set of Interrogatories and Requests for Production of Documents.[14]   (Docket entry #72.)   The Court will address separately each of the disputed interrogatories or requests for production of documents.

**1.      Defendants' Interrogatory No. 1**

**Defendants' Interrogatory No 1**: Please state whether G&K Services has a profit and loss analysis for Bill's Super Foods and other customers for the last three years and on whole for the Arkansas region or divisional territory.

**Plaintiff's Response**: G&K does not track or maintain profit and loss analysis for individual customers.  G&K does track profits and losses by location of each facility and by geographical regions.  G&K objects to the production of such information inasmuch as no such information is specific to Bill's Super Foods, and furthermore such information is confidential and proprietary, and is not reasonably calculated to lead to the discovery of admissible evidence.

(Docket entry #72, Ex. 1 at 1.)

Defendants argue that they "need to review such information to determine whether Plaintiff was damaged and/or sought to mitigate its damages as a result of the alleged breach of contract."

---

[14]Defendants served Plaintiff with this discovery on February 4, 2009, prior to the expiration of the discovery cutoff.

(Docket entry #72 at 2, ¶8.)   In response, Plaintiff asserts that: (1) it has established through affidavits and deposition testimony the "impossibility of calculation of damages for individual customers due to the manner in which it does business, *i.e.* purchasing goods in bulk; impossibility of allocating energy, labor, material costs to individual customers, fluctuation of customer needs;" (2) it does not maintain profit and loss information by individual customer because it "is not capable of determination;" (3) Defendants have not articulated "how learning [Plaintiff's] profit and loss figures by region or territory for the past three years is in any way probative of damages related to [Defendants'] breach"; and (4) Plaintiff's manager, Leslie Wood, has given deposition testimony as to the revenue and profit figures for the region in which Jonesboro is located, and "[a]ny such further information is not relevant to any issue in this case[.]"  (Docket entry #75 at 3-4.)

Both parties seem to have lost track of the narrow question posed by Defendants' Interrogatory No. 1: Does Plaintiff maintain profit and loss information for Bill's Super Foods and other customers?  Plaintiff's Response to the Interrogatory is **No**.[15]  Thus, Defendants' request to compel a response to Interrogatory No. 1 is denied, as moot.

2.      **Defendants' Request for Production No. 1**

**Defendants' Request for Production No. 1**: Please attach to your answers to these Interrogatories and Requests for Production of Documents copies of all documents relating to your answer to the foregoing Interrogatory.

**Plaintiff's Response to Request for Production No. 1**: G&K objects to the production of such information inasmuch as no such information is specific to Bill's Super Foods, and furthermore such information is confidential and proprietary, and is not relevant to any issue in this case, nor reasonably calculated to lead to the discovery of admissible evidence.

---

[15]After answering no, G&K goes on to pose an objection on the ground that "production of such information, 'by location of each [G&K] facility and by geographic region' is not relevant or reasonably calculated to lead to the discovery of admissible evidence."

(Docket entry #72, Ex. 1 at 2.)

The parties stand on the same arguments they raised in connection with Defendants' Interrogatory No. 1.

The only profit and loss information maintained by G&K is by G&K facility and by geographic region--not by individual customers such as Defendant Bill's. Thus, based on the way G&K maintains its profit and loss information, these figures are not relevant to Plaintiff's claim for liquidated damages. Furthermore, Defendants have failed to make any showing of how this information might lead to the discovery of relevant evidence.[16] Thus, Defendants' request to compel Plaintiff to produce the documents described in Request for Production No. 1 is denied.

### 3.    Defendants' Interrogatory No. 2

**Defendants' Interrogatory No. 2**: Please identify the name and number of Arkansas customers that have left your services and the amount of profit and revenue from each customer, beginning 2004 to date.

**Plaintiff's Response**: Objection. To the extent discoverable, this information has already been provided to Defendants. In Defendants' First Set of Interrogatories, Defendants requested essentially the same information by requesting a list of all

---

[16]Under Arkansas law, a "contract will be construed as properly stipulating for liquidated damages where, from a prospective view of the contract, it appears (1) that the parties contemplated that damages would flow from a failure to perform the contract; (2) that such damages would be indeterminate or difficult to ascertain; and (3) that the sum bears some reasonable proportion to the damages which the parties contemplated might flow from a failure to perform the contract." *See Johnson v. Jones*, 33 Ark. App. 149, 807 S.W.2d 39 (1991) (*citing Alley v. Rodgers*, 269 Ark. 262, 599 S.W.2d 739 (1980)).

"In determining whether a provision in a contract is for a penalty or for liquidated damages, generally, the intention of the parties will control. Whether the parties intended a provision of a contract to be a penalty or a stipulation for liquidated damages is a question of fact. The mere fact that the words 'liquidated damages' are used is not controlling. Nor is use of the word 'penal' controlling, but it must be considered in determining the intention of the parties to the contract. Additionally, the court must look at the language of the contract, the subject of the contract and its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated." Id. (internal citations omitted).

customers in Arkansas and Tennessee who have terminated their service agreements with G&K because of disputes similar to the allegations in this action. G&K has complied with this order and supplied such a list. As to profits and revenue for each customer, such information is neither relevant to any issue in this case, nor reasonably calculated to lead to the discovery of admissible evidence. Further, G&K does not maintain profit information by customer.

(Docket entry #72, Ex. 1 at 2.)

Defendants argue that Plaintiff should be compelled to respond to Interrogatory No. 2 because: (1) they believe the liquidated damages provision of the Service Agreement is an unenforceable penalty; and (2) they "need to review such information to determine how Defendants' proper termination of the Service Agreement did not otherwise affect Plaintiff's profit or revenue." (Docket entry #72 at 3, ¶10.) In response, Plaintiff relies on the same arguments stated in its response objecting to this interrogatory. (Docket entry #75 at 4-5.)

The Court agrees with Plaintiff that, to the extent Interrogatory No. 2 asks for a list of Arkansas customers that have "left Plaintiff's services" since 2004, it is seeking information already covered by the Court's December 17, 2008 Order.[17] In that Order, the Court granted Defendant's Motion to Compel Plaintiff to answer their first Interrogatory No. 8, "but only as to customers in Tennessee and Arkansas who, since January 2002 and going forward, have terminated their service agreement with G&K Services because of disputes similar to the allegations in this action." (Docket entry #40 at 6.)

Consistent with the Court's earlier ruling on this issue, Defendants' request to compel Plaintiff to answer Interrogatory No. 2 is denied. Plaintiff has already provided Defendants with the

---

[17]In Defendants' first Interrogatory No. 8, they asked for the identification of all Arkansas and Tennessee customers who had terminated their Service Agreement with Plaintiff since 2002, and asked Plaintiff to list the reason given for termination.

list of all Arkansas customers who have terminated contracts with Plaintiff.  Because Defendants

do not maintain profit and loss information by customer, it is impossible for Plaintiff to provide the

remainder of the information sought in this interrogatory.

**4.      Defendants' Request for Production No. 2**

**Defendants' Request for Production No. 2**: Please attach to your answers to these
Interrogatories and Requests for Production of Documents copies of all documents
relating to you answer to the foregoing Interrogatory.

**Plaintiff's Response**: See Response to Interrogatory No. 2.

(Docket entry #72, Ex. 1 at 3.)

Defendants argue that, for the same reasons stated in support of compelling Plaintiff to

answer Interrogatory No. 2, "the requested documents are needed "to determine whether [plaintiff]

suffered actual damages and/or attempted to mitigate its alleged damages . ..."  (Docket entry #72

at 3-4, ¶11.)  In response, Plaintiff stands on the same arguments it made in objecting to answering

Interrogatory No. 2.  (Docket entry #75 at 4-5.)

Defendants' request to compel Plaintiff to provide the documents described in Request for

Production No. 2 is denied for the same reasons stated by the Court in denying Defendants' request

to compel Plaintiff to answer Interrogatory No. 2.

**5.      Defendants' Interrogatory No. 6**

**Defendants' Interrogatory No. 6**: Please state all new Arkansas territory or
Northeast Arkansas/Southeast Missouri customers now doing business with G&K
Services since Bill's Super Foods terminated the Service Agreement.  For each,
please state the name, address, telephone number and contact person.

**Plaintiff's Response:** Objection.  The identity of new customers of G&K since
Defendant terminated its agreement with G&K is proprietary and confidential
information, and is neither relevant to any issue in this case, nor reasonably
calculated to lead to the discovery of admissible evidence.  Further, the Court, in its
Order of December 12, 2008, specifically sustained G&K's objection to a similar

interrogatory seeking a list of all G&K's customers in the Jonesboro area, finding that no sufficient basis is [sic] given for why such information is needed or relevant. The same is true for this interrogatory.

(Docket entry #72, Ex. 1 at 4-5.)

Defendants argue that they are entitled to this information because: (1) they believe that the liquidated damages provision in the contract is an unenforceable penalty; and (2) "should a jury find liability on Defendants' part, Defendants have the right to present evidence of whether Plaintiff mitigated its damages as a result of the allegations made in Plaintiff's Complaint." (Docket entry #72 at 4, ¶ 12.)

In response, Plaintiff argues that: (1) the information requested in this Interrogatory "is essentially the same as a prior interrogatory propounded months ago, to which this Court sustained [Defendants'] objection;" (2) Defendants do "not explain how the identity of new customers of [Plaintiff] is any way probative to [Defendants'] assertion that [Plaintiff's] liquidated damages provision is an unenforceable penalty;" and (3) it will "concede that it has both gained and lost customers since Bill's breached its agreement with [Plaintiff], but that Defendants have not demonstrated 'relevance' as to the requested information." (Docket entry #75 at 5-6.)

The Court agrees with Plaintiff that the information sought by Defendants in Interrogatory No. 6 is already covered by the Court's December 17, 2008 Order addressing Defendants' First Interrogatory No. 10, which asked Plaintiff for a list of all of its customers in the Jonesboro area. The Court sustained Plaintiff's objection to this Interrogatory because Defendants failed to explain how this information was needed or relevant. (Docket entry #40 at 7.) Likewise, the Court agrees that Defendants have not shown how the requested information is relevant to Plaintiff's liquidated damages claim. Thus, Defendants' request to compel Plaintiff to answer Interrogatory No. 6 is

denied.

### 6.      Defendants' Interrogatory No. 7

**Defendants' Interrogatory No. 7**: Please state G&K Services Northeast Arkansas/Southeast Missouri, or the applicable territory, gross revenue and net profit for years 2004 to date.

**Plaintiff's Response**: Objection.  Such information for G&K is proprietary and confidential information, and is neither relevant to any issue in this case, nor reasonably calculated to lead to the discovery of admissible evidence.

(Docket entry #72, Ex. 1 at 5.)

Defendants argue that they are entitled to this information in order to determine: (1) "whether Plaintiff has any actual damages"; and (2) whether the liquidated damages are disproportionate to the actual damage they allegedly incurred."  (Docket entry #72 at 4, ¶13.)

In response, Plaintiff argues that: (1) the Interrogatory is not "relevant or probative"; (2) it does *not* maintain profit or loss by customer and  "gross revenue and net profit by territory is not probative of any issue"; and (3) "evidence has already been produced to [Defendants] concerning the impossibility of correlating gross profit or loss to individual customers because of a myriad of factors."  (Docket entry #75 at 6.)

Defendant's request to compel Plaintiff to answer Interrogatory No. 7 is denied.  Defendants have failed to establish how this information is relevant to: (1) Plaintiff's liquidated damages claim; or (2) the amount of actual damages Plaintiff may have suffered as a result of Defendants' alleged breach of contract.

### 7.      Defendants' Request for Production No. 4

**Defendants' Request for Production No. 4**: Please attach to your answers to these Interrogatories and Requests for Production of Documents copies of your financial statements for the Northeast Arkansas Southeast Missouri divisions for the last three (3) years.

**Plaintiff's Response**: See response to Interrogatory No. 7.

(Docket entry #72, Ex. 1at 5.)

Defendants argue that they are entitled to a response to Request for Production No. 4 based on the arguments they made in connection with Interrogatories Nos. 6-7.  (Docket entry #72 at 5, ¶14.)  In response, Plaintiff stands on its previous arguments regarding Interrogatory No. 7.  (Docket entry #75 at 7.)

Defendants request to compel Plaintiff to produce the documents described in Request for Production No. 4 is denied for the same reasons stated by the Court for denying Defendants' request to compel Plaintiff to answer Interrogatory No. 7.

8.     **Defendants' Interrogatory No. 8**

**Defendants' Interrogatory No. 8**: Please identify the number and identity of new Arkansas territory customers utilizing G&K Services and the amount of revenue generated by each beginning 2005 to date.

**Plaintiff's Response**: Objection.  The identity of any new customers of G&K since 2005 is proprietary and confidential information, and is neither relevant to any issue in this case, nor reasonably calculated to lead to the discovery of admissible evidence.  Further, the Court, in its Order of December 12, 2008, specifically sustained G&K's objection to a similar interrogatory seeking a list of all G&K's customers in the Jonesboro area, finding that no sufficient basis is given for why such information is needed or relevant.  The same is true for this interrogatory.

(Docket entry #72 at 5-6.)

Defendants argue that Plaintiff should be compelled to answer Interrogatory No. 8 because they need that information to determine "whether Plaintiff suffered any actual damages an/or whether it attempted to mitigate damages."  (Docket entry #72 at 5, ¶15.)

In response, Plaintiff argues that: (1) the Court previously denied a request for a list of its customers; (2) the customer list is not relevant to any aspect of Plaintiff's claim for liquidated

damages; (3) the amount of revenue generated by new customers is irrelevant; and (4) it has "no way of knowing whether [Defendants] would contact present customers and what such contact might entail."  (Docket entry #75 at 7.)

On its face, the information sought in Interrogatory No. 8 does not appear to be relevant to the questions of liquidated damages, actual damages, or Plaintiff's efforts to mitigate damages. Furthermore, Defendants have made no showing on how that information is relevant or how it might lead to the discovery of evidence that is relevant.  Accordingly, Defendants' request to compel Plaintiff to answer Interrogatory No. 8 is denied.

**F.     Defendants' Motion for Leave to File Amended Answer and Counterclaim (docket entry #74)**

On April 23, 2009, Defendants filed yet another Motion requesting permission to: (1) amend their Answer to assert additional affirmative defenses; and (2) amend their Counterclaim to incorporate a new claim.  Defendants do not explain in their Motion the nature of the amended counterclaim and affirmative defenses.  However, based on the proposed Third Amended Counterclaim attached to Defendants' Motion, it appears they seek to assert new claims for "Fraudulent Inducement/Procurement of Contract Constructive Fraud," and rescission of the Service Agreement.  (Docket entry #74, Ex. A, Defendants' Proposed Third Amended Counterclaim.)

After reviewing Defendants' proposed Third Amended Answer, which is also attached to their Motion, it appears Defendants seek to amend the "affirmative defenses" portion of their Answer as follows:[18]

44.) The September 12, 2006, Service Agreement is *void ab initio* as Plaintiff

---

[18]In Defendants' Proposed Third Amended Answer, the proposed amendments are highlighted in bold print.

41

fraudulently induced Defendants to enter into a new Service Agreement knowing they were in breach of their previous **2002** Service Agreement by virtue of a purported class action settlement **for fraudulent charges** and that the previous Service Agreement had not yet expired; **45.) As a result of the September 12, 2006 Service Agreement being null and void, the parties should have still been operating under the 2002 agreement which was set to expire on August 20, 2007; 46) The September 12, 2006, Service Agreement should be rescinded and the parties should be returned to the positions they wold have occupied if the September 12, 2006 Service Agreement had not been made and which Agreement would have expired on August 20, 2007[.]**

(Docket entry #74, Ex. B. Defendants' Proposed Third Amended Answer.)

Defendants do not explain why, at this late date, they are seeking permission, yet again, to amend their pleadings. They state only that they "found it necessary" "[i]n the course of discovery." (Docket entry #74, Motion for Leave to Amend at 2, ¶3.) Plaintiff opposes Defendants' Motion to Amend on the ground that it is untimely under the Court's Final Scheduling Order.[19] In a Reply, Defendants contend that their Motion should be granted because they previously consented to three amendments to Plaintiff's Complaint, and because Plaintiff allegedly has been dilatory in discovery and in filing multiple motions. (Docket entry #78.)

As a general rule, leave to amend "shall be freely given when justice so requires," *see* Fed. Civ. P. 15(a). However, the Court may disallow amendment for various reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Moore-El v. Luebbers*, 446 F.3d 890, 901-902 (8th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Defendants have made no showing that the time frames established in the Court's Final Scheduling Order were insufficient

---

[19]Under the Final Scheduling Order (docket entry #15), the deadline for the parties to amend their pleadings was November 6, 2008.

to conduct discovery, litigate discovery disputes, and amend the pleadings on a timely basis. Furthermore, the matters that are the subject of the proposed amendments have been known or should have been readily apparent to Defendants for some time.

Defendants' Motion to Amend its Answer and Counterclaim was filed more than five months *after* the November 6, 2008 deadline to amend the pleadings. While Defendants may have consented to Plaintiff's earlier requests to amend its pleadings, the Court finds it significant that all of those amendments were filed by Plaintiff within the deadline established in the Court's Scheduling Order. Thus, Defendants' Motion for Leave to File Amended Answer and Counterclaim is denied.

### III.  Conclusion

IT IS THEREFORE ORDERED THAT:

1.  Plaintiff's Motion For Order Declaring Plaintiff's Local Rule 56.1 Statement Admitted (docket entry #51) is GRANTED IN PART, and DENIED IN PART.

2.  Defendants' Motion to Extend the Time Period to Conduct Discovery and Extend the Dispositive Motions Deadline (docket entry #61) is DENIED.

3.  Plaintiff's Motion to Compel Discovery (docket entry #66) is DENIED, AS MOOT.

4.  Plaintiff's Motion to Strike (docket entry #68) is DENIED.

5. Defendants' Motion to Compel Discovery Responses (docket entry #72) is DENIED.

6. Defendants' Motion for Leave  to Amend Their Amended Counter Claim and Answer (docket entry #74) is DENIED.

Dated this <u>23rd</u>  day of July, 2009.

_____
UNITED STATES MAGISTRATE JUDGE